La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Comparecen ante nos José Colón Rivera et al. (en ade-lante los peticionarios) y nos solicitan la revisión de una Sentencia emitida por el Tribunal de Apelaciones. Me-diante dicho dictamen, el tribunal a quo revocó una Reso-lución del Tribunal de Primera Instancia que autorizó una Demanda Enmendada en un pleito de índole laboral ocho (8) años después de presentada la demanda original.
El recurso presentado por los peticionarios nos brinda la oportunidad, inter alia, de discutir los factores que deben considerarse al ponderar si se autoriza una enmienda a las alegaciones según las Reglas de Procedimiento Civil.(1) En particular, analizaremos qué circunstancias constituyen perjuicio indebido para la parte que se opone a la autori-zación de la enmienda. Además, nos expresaremos en cuanto al efecto que puede tener la dilación indebida de la parte que presenta la enmienda.
Previo a nuestro análisis, exponemos los hechos que die-ron génesis a la controversia ante nos.
I
El caso de autos ha seguido un tracto procesal anómalo y extenso por más de una década. El 14 de abril de 1998, el Sr. José Colón Rivera y doscientos cuarenta y siete (247) codemandantes presentaron una Demanda contra su pa-trono Wyeth Pharmaceuticals, Co. (en adelante Wyeth) ante el Tribunal de Primera Instancia, Sala Superior de Guayama.
En esta Demanda se presentaron exclusivamente recla-maciones de pago de salarios. Específicamente, los peticio- *189 narios reclamaron el pago en concepto de horas extras tra-bajadas en exceso de ocho (8) diarias, por los séptimos días de trabajo consecutivos y por las horas trabajadas durante el periodo de tomar alimentos, más la nulidad de la reduc-ción de ese periodo.
Previo a la presentación de la Demanda, otro pleito ha-bía comenzado el 17 de febrero de 1998, cuando un se-gundo grupo de empleados de Wyeth presentó una de-manda de clase en De León v. Wyeth, Civil Núm. GPE98-0024. En ese pleito los empleados también reclamaron el pago de salarios pero, a diferencia del caso de autos, se incluyeron reclamaciones para el pago de salarios, en con-cepto de Bono de Navidad, vacaciones no pagadas o frac-cionadas y por el tiempo que tomaba a los empleados ves-tirse y desvestirse de sus uniformes antes de iniciar su jornada de trabajo (reclamación conocida en la esfera federal como donning and doffing).
El 25 de agosto de 1998 se solicitó que el caso De León v. Wyeth, supra, y el de autos fueran consolidados. Posterior-mente, el 23 de octubre de 1998 varios demandantes en el caso de autos peticionaron intervención en el caso De León v. Wyeth, supra. El 10 de diciembre de 1999, el Tribunal de Primera Instancia emitió una Sentencia Sumaria Parcial en De León v. Wyeth, supra, sin expresarse en cuanto a las mociones de consolidación e intervención. Finalmente, el 23 de febrero de 2000 se denegaron las mociones de intervención.
Así las cosas, y luego de varios trámites procesales que incluyeron cambios de abogados y apelaciones interlocuto-rias, el 9 de agosto de 2005 el juez superior Hon. Isidro Rivera Sánchez solicitó que se evaluara si la cantidad de demandantes, además de la complejidad de las reclamacio-nes en el pleito de autos, ameritaba que se certificara el caso como complejo al amparo de las Reglas para Casos Civiles de Litigación Compleja, 4 L.P.R.A. Ap. XXVII (en adelante Reglas de Litigación Compleja). El 3 de junio de *190 2008, el Juez Administrador de la Región Judicial de Aibo-nito certificó el caso como complejo y solicitó al Juez Presi-dente de este Tribunal que designara a un juez para ma-nejar directamente el caso. El Juez Presidente acogió esa solicitud el 5 de septiembre de 2008 y designó al juez superior Hon. Julio Díaz Valdés para que atendiera el pleito.
Ab interim, los peticionarios instaron una Demanda En-mendada el 9 de junio de 2006. Es decir, ocho (8) años después de presentada la demanda original, los peticiona-rios solicitaron permiso del Tribunal de Primera Instancia para enmendar su reclamación inicial y esbozar una nueva teoría legal en cuanto a las reclamaciones por horas extras y por la reducción del periodo de tomar alimentos. Además, en la Demanda Enmendada se incorporaron treinta y dos (32) nuevos demandantes y varios interventores.
Por otra parte, la Demanda Enmendada incorporó una serie de reclamaciones nuevas, a saber, pago del Bono de Navidad, pago por vacaciones fraccionadas y no pagadas, y pago por la no consideración del diferencial en el pago de beneficios. Además, se alteró la teoría legal en cuanto a la reclamación por horas extras y por la reducción del periodo de tomar alimentos. Estas reclamaciones eran, en esencia, las mismas que se presentaron contra Wyeth en De León v. Wyeth, supra.
A posteriori, mediante Resolución de 21 de enero de 2009, notificada como Minuta el 5 de febrero de 2009, el Tribunal de Primera Instancia, inter alia, autorizó la De-manda Enmendada y ordenó la calendarización del descu-brimiento de prueba.
Inconforme con ese dictamen, Wyeth presentó un re-curso de certiorari el 6 de marzo de 2009 ante el Tribunal de Apelaciones. En este, Wyeth impugnó la determinación de autorizar la Demanda Enmendada y alegó que la en-mienda a las alegaciones, presentada ocho (8) años des-pués de iniciado el pleito, le causaría perjuicio indebido y dilataría innecesariamente los procedimientos de un caso *191 complejo. Además, Wyeth alegó que la dejadez y negligen-cia de los peticionarios al esperar ocho (8) años para en-mendar la demanda e incluir reclamaciones de las cuales tenían conocimiento desde los inicios del pleito, represen-taba una violación a la doctrina de incuria. Luego de varios trámites procesales, que incluyeron la paralización de los procedimientos ante el Tribunal de Primera Instancia, (2) el Tribunal de Apelaciones expidió el auto de certiorari solici-tado y, el 12 de julio de 2010, emitió una Sentencia en la cual revocó la determinación del Tribunal de Primera Ins-tancia de autorizar la Demanda Enmendada. En síntesis, el foro apelativo intermedio concluyó que el término trans-currido desde la presentación de la Demanda inicial y la Demanda Enmendada pesaba contra la inclusión de nue-vos demandantes y nuevas causas de acción en esa etapa de los procedimientos.
Inconformes, los peticionarios presentaron un recurso de certiorari el 13 de octubre de 2010 ante este Foro, en el cual plantearon los errores siguientes:
[1.] Erro [sic] el TA en su Sentencia, al asumir jurisdicción [sic] sobre la materia objeto del recurso considerando en sus méritos [sic] el error señalado al TPI por la peticionaria Wyeth, ahora Pfizer, expidiendo auto de certiorari y revocando simultáneamente [sic] la “Minuta-Resolucion” [sic] objeto del recurso, a pesar de que el error señalado se tomó académico [sic] desde el mismo momento en que Wyeth, ahora Pfizer, contesto [sic] voluntaria e incondicionalmente la demanda en-mendada ante el TPI, cuya procedencia antes cuestionaba en alzada, por lo cual el TA al dictar la sentencia objeto en este recurso, ejerció en forma “ultra vires” su poder judicial en au-sencia de un “caso o controversia justiciable” ignorando el mandato constitucional que delimita su poder judicial.
[2.] Erró el TA en la Sentencia dictada, al ejercer su jurisdicción apelativa en alzada a pesar de que la Resolución-Minuta del TPI objeto del recurso era una decisión interlocutoria, no *192 aplicando ninguna de las excepciones a la norma de absten-ción apelativa jurisdiccional en casos complejos provista en la Regla 16(c [sic] y d) [sic] de las Reglas para Casos Civiles de Litigación Compleja.
[3.] Erró el TA en su Sentencia, en cuanto consideró y acogió alegados errores del TPI no planteados por Wyeth en la petición de “certiorari”, los que fueron traídos tardíamente en la oposición a desestimación del recurso de Wyeth, del 16 de febrero de 2010, para lo cual carecía de jurisdicción.
[4.] Erró el TA en su Sentencia, en cuanto determinó que no le correspondía adjudicar en alzada defensas de alegada prescripción, lo cual según dijo era propio de una moción de desestimación a decidirse en primera instancia por el juez designado en este caso complejo, y aún así adjudicó un alegado planteamiento de prescripción y otros de hechos y de derecho que no le correspondía adjudicar en ese momento.
[5.] Erró el TA en su Sentencia, al determinar la improcedencia de la Demanda Enmendada del 9 de jtrnio de 2006 bajo los parámetros fijados en la Regla 13.1 de Procedimiento Civil y la jurisprudencia aplicable, interviniendo indebidamente con la sana discreción del juez designado a este caso complejo Hon. Julio Díaz Valdés, nombrado por el Juez Presidente del TSPR, Honorable Federico Hernández Denton.
[6.] Erró el TA en su Sentencia, al adjudicar que las reclamaciones de “gowning”, y por el impacto del diferencial salarial son nuevas y están prescritas, al igual que las reclamaciones de los 32 demandantes y 12 interventores. Petición de certiorari, pág. 22.
Examinado el recurso, el 18 de marzo de 2011 acorda-mos denegar la petición de certiorari. Por consiguiente, el 8 de abril de 2011, los peticionarios presentaron una Moción de Reconsideración y, el 29 de abril de 2011, reconsidera-mos y expedimos el recurso de autos. Contando con el be-neficio de la comparecencia de ambas partes, procedemos a resolver sin ulterior trámite.
II
A. En su primer error, los peticionarios nos plantean que erró el Tribunal de Apelaciones al expedir el recurso de certiorari presentado por Wyeth en el cual se solicitó la *193 revocación de la determinación del Tribunal de Primera Instancia de autorizar la Demanda Enmendada. Argumen-tan que la controversia presentada en el recurso se tornó académica al Wyeth contestar la Demanda Enmendada el 16 de marzo de 2009. No les asiste la razón.
Es norma conocida en nuestro ordenamiento que los Tribunales en Puerto Rico son de carácter rogado. Es decir, las partes en un pleito deben pedir la intervención del foro judicial. En el caso del Tribunal de Apelaciones, este tiene autoridad por ley para atender recursos de certiorari sobre la revisión de decisiones interlocutorias del Tribunal de Primera Instancia. 4 L.P.R.A. sec. 24y(b). Como norma general, la presentación de un recurso de certiorari ante el Tribunal de Apelaciones no paraliza los procedimientos del caso en el Tribunal de Primera Instancia. 4 L.P.R.A. Ap. XXII-B, R. 35. No obstante, motu proprio o a solicitud de una parte, el Tribunal de Apelaciones puede emitir órdenes para paralizar los procedimientos ante el Tribunal de Primera Instancia. Id.
Una vez el Tribunal de Apelaciones emite una orden para paralizar los procedimientos o los términos en el foro de instancia, este último pierde jurisdicción sobre el asunto. Pérez, Ex parte v. Depto. de la Familia, 147 D.P.R. 556, 570 (1999). Véase, también, Pueblo v. Pérez, 159 D.P.R. 554, 564 (2003). Consecuentemente, cualquier ac-ción realizada por el Tribunal de Primera Instancia sobre el asunto paralizado será nula, ya que carece de jurisdic-ción sobre el asunto. Pérez, Ex parte v. Depto. de la Familia, supra. “Para que el tribunal de inferior jerarquía ad-quiera nuevamente jurisdicción, es decir, poder y facultad para continuar con los procedimientos, es necesario que el Tribunal [de Apelaciones] le remita el mandato corres-pondiente.” íd., pág. 570.
En el presente caso se presentó una Demanda Enmen-dada el 9 de junio de 2006 y, luego de varios trámites pro-cesales, el Tribunal de Primera Instancia la autorizó. *194 Wyeth acudió al Tribunal de Apelaciones mediante un cer-tiorari el 6 de marzo de 2009 para impugnar dicho proceder. Sin embargo, contestó la Demanda Enmendada diez (10) días después. Wyeth arguye que procedió de esa manera como medida cautelar por entender, uberrima fi-des, que el término para contestar la Demanda Enmen-dada no había sido paralizado.
En efecto, mediante una Orden de 13 de marzo de 2009, el Tribunal de Apelaciones había paralizado los términos para contestar la Demanda Enmendada y para realizar el descubrimiento de prueba. La Contestación a la Demanda Enmendada presentada por Wyeth resultó, pues, inoficiosa ab initio, ya que el Tribunal de Primera Instancia carecía de jurisdicción para atender cualquier asunto relacionado con esta. Es decir, una vez paralizado el término para con-testar, nada podía disponer el Tribunal de Primera Instan-cia sobre el asunto, por lo cual no puede decirse que Wyeth renunció a sus reclamos en cuanto a la improcedencia de la Demanda Enmendada.(3)
En conclusión, la Contestación a la Demanda Enmen-dada por parte de Wyeth no tuvo el efecto de tornar en académico el recurso. Por ende, no erró el Tribunal de Ape-laciones al expedir y atender el recurso de certiorari pre-sentado por Wyeth.
B. En su segundo señalamiento de error, los peticiona-rios plantean que erró el Tribunal de Apelaciones al acep-tar una apelación interlocutoria de un caso que ha sido certificado como complejo según las Reglas de Litigación *195 Compleja. Este caso nos permite, por primera vez, inter-pretar las disposiciones de estas reglas en cuanto a los re-cursos apelativos de casos certificados como complejos.
El 30 de junio de 1999 adoptamos las Reglas de Litigación Compleja en virtud de nuestro poder inherente para establecer los mecanismos necesarios para la mejor administración de los procedimientos judiciales. In re R. Casos Civ. Litig. Compleja, 148 D.P.R. 932, 936 (1999). “Su propósito es establecer el trámite administrativo de todo procedimiento de carácter civil que sea declarado como un caso de litigación compleja.” López v. Baxter, 163 D.P.R. 628, 636 (2005). Debe recordarse que estas reglas sirven como normas supletorias a las Reglas de Procedimiento Civil, por lo cual deben interpretarse de manera consecuente entre sí. Id.
Debido a la naturaleza de los casos sujetos a las Reglas de Litigación Compleja, estas regulan de forma restrictiva la manera como pueden apelarse las decisiones de los jueces a cargo de casos complejos. En específico, la Regla 16(c) dispone:
(c) Las partes deberán limitar la presentación de recursos ante el foro apelativo a decisiones finales del tribunal. Los recursos para revisar resoluciones interlocutorias solo se con-siderarán cuando la decisión o resolución recurrida:
(1) Trate sobre un asunto de derecho que controla el trá-mite del caso sobre el cual existen diferencias de interpreta-ción significativas y la petición de revisión ante el foro apela-tivo puede simplificar la litigación o facilitar el manejo del caso; o
(2) amerite una consideración detenida para el análisis del problema y la etapa del procedimiento en la que se pre-senta resulta la más propicia para su consideración; o
(3) puede considerarse como que pone fin a una reclama-ción distinta y separable de otras reclamaciones litigadas en el caso; o
(4) trate sobre un interdicto y se demuestre que la deci-sión del tribunal puede razonablemente provocar daños serios e irreparables; o
*196 (5) incluye una determinación expresa y clara de que no existe causa que justifique una dilación en la presentación de un recurso apelativo en su contra o una indicación expresa de que la decisión merece revisarse con premura[.]
(d) Nada de lo dispuesto en el inciso (c) de esta regla impe-dirá que se revisen decisiones interlocutorias que afecten cual-quier derecho sustantivo de alguna parte. 4 L.P.R.A. App. XXVII.
A tenor con este precepto, y como norma general, las partes en un pleito complejo no pueden recurrir al Tribunal de Apelaciones para revisar asuntos que no sean decisiones finales de los jueces a cargo. Solo cuando el tribunal revisor entienda que está presente alguna de las excepciones ex-plícitamente reconocidas en la regla, podrá asumir juris-dicción sobre el recurso.
La excepción establecida en la Regla 16(c)(1) per-mite a los tribunales apelativos revisar las decisiones interlocutorias que traten asuntos de derecho que controlen el trámite del caso sobre los que hay diferencias de criterio. Además, la intervención del foro apelativo debe tener el efecto de agilizar, simplificar o facilitar el manejo del caso complejo.
En el caso de autos, Wyeth recurrió al Tribunal de Ape-laciones y solicitó la revisión de la determinación del Tribunal de Primera Instancia, que autorizó la Demanda En-mendada presentada ocho (8) años después de la original. El foro apelativo intermedio entendió que podía asumir ju-risdicción sobre el recurso interlocutorio, ya que estaban presentes las excepciones reconocidas en la Regla 16(c)(1) y (2). Coincidimos con la determinación del foro apelativo.
La concesión del permiso para presentar una Demanda Enmendada es un asunto de estricto derecho que tiene el efecto de controlar el trámite del caso. Ello es así, ya que de haberse sostenido la determinación del Tribunal de Pri-mera Instancia que autorizó la Demanda Enmendada, esta hubiera regido todo el trámite posterior del caso. A la vez, *197 la revisión del Tribunal de Apelaciones en este asunto en particular tuvo el efecto de simplificar la litigación, ya que denegó la inclusión de reclamaciones nuevas y de teorías de derecho distintas en un pleito certificado como complejo.
Por ende, no erró el Tribunal de Apelaciones al expedir el recurso de certiorari para revisar una Resolución Inter-locutoria en un caso sujeto a las Reglas de Litigación Compleja.(4)
III
A. Nos corresponde ahora resolver si incidió el Tribunal de Apelaciones al revocar la determinación del juez asignado a este caso complejo y que autorizó la presenta-ción de una Demanda Enmendada en el caso de autos. Esto a pesar de haber transcurrido ocho (8) años desde la pre-sentación de la demanda original y ante la alegación de Wyeth de que esa enmienda le causaría peijuicio indebido.
La Regla 13.1 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III) permite a las partes en un pleito enmendar sus alegaciones para incluir cuestiones omitidas o para clarificar reclamaciones. Asimismo, permite la presentación de enmiendas en dos (2) circunstancias particulares.(5)
*198 Primero, una parte puede enmendar sus alegaciones una vez en cualquier momento antes de que se le haya notificado una alegación responsiva o en cualquier mo-mento dentro de los veinte (20) días de haber notificado su alegación, si su alegación no admite alegación responsiva. Regla 13.1 de Procedimiento Civil, supra. Segundo, se per-mite que las partes enmienden sus alegaciones en cual-quier otra circunstancia, pero únicamente con el permiso del tribunal o con la anuencia de la parte contraria. Id.
La autorización para enmendar las alegaciones al am-paro de esta regla debe concederse liberalmente. Regla 13.1 de Procedimiento Civil, supra; S.L.G. Font Bardón v. Mini-Warehouse, 179 D.P.R. 322, 334 (2010). Hemos sido enfáticos en que existe una clara política pública en nues-tro ordenamiento de que los casos se deben ventilar en sus méritos —Rivera et al. v. Superior Pkg., Inc. et al., 132 D.P.R. 115, 124 (1992)— , por lo cual las Reglas de Procedi-miento Civil favorecen la autorización de las enmiendas a las alegaciones. J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., San Juan, Pubs. J.T.S., 2011, T. II, pág. 592.
Por ende, los tribunales poseen amplia facultad discrecional para decidir si permiten la enmienda a una alegación, incluso en etapas adelantadas de los procedimientos. J.A. Echevarría Vargas, Procedimiento Civil Puertorriqueño, Colombia, [s. Ed.], 2010, pág. 116. Solo ante un perjuicio manifiesto a la parte contraria o un claro abuso de discreción al autorizar la enmienda procede la revocación de la determinación del juez. S.L.G. Font Bardón v. Mini-Warehouse, supra, pág. 334; Ñeca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860, 868 (1995).
*199 No obstante, a pesar de que las Reglas de Procedimiento Civil favorecen un enfoque liberal a la autorización de enmiendas a las alegaciones, esta liberalidad no es infinita. S.L.G. Font Bardón v. Mini-Warehouse, supra; Romero v. S.L.G. Reyes, 164 D.P.R. 721, 730 (2005); Epifanio Vidal, Inc. v. Suro, 103 D.P.R. 793, 796 (1976). Para demarcar el ámbito de discreción de los tribunales, hemos establecido cuatro (4) elementos que deben considerarse al momento de decidir si se autoriza una enmienda. Estos elementos son: “(1) el impacto del tiempo trascurrido previo a la enmienda, (2) la razón de la demora, (3) el perjuicio a la otra parte, y (4) la procedencia de la enmienda solicitada”. S.L.G. Sierra v. Rodríguez, 163 D.P.R. 738, 748 (2005). Estos factores no operan de modo aislado, por lo cual hemos adoptado un enfoque dinámico mediante el cual deben considerarse los cuatro (4) conjuntamente. S.L.G. Font Bardón v. Mini-Warehouse, supra, pág. 335; S.L.G. Sierra v. Rodríguez, supra. Véase, también, Cuevas Segarra, op. cit., T. II, pág. 594. Este enfoque dinámico significa que el paso del tiempo, por sí solo, no obliga a los tribunales a negar el permiso para enmendar las alegaciones. S.L.G. Font Bardón v. Mini-Warehouse, supra.
Sin embargo, recientemente reiteramos que “[e]l factor que resulta de mayor relevancia al momento de evaluar una solicitud de autorización para enmendar las alegaciones es el perjuicio que puede causarse a la parte contraria”. S.L.G. Font Bardón v. Mini-Warehouse, supra, pág. 335. A tales efectos, el tratadista Cuevas Segarra señala que “cuando la propuesta enmienda altera radicalmente el alcance y naturaleza del caso, con un consecuencial cambio, convirtiendo la controversia inicial en tangencial, el permiso debe ser denegado, pero ello no significa que no se puedan adicionar nuevas teorías o nuevas reclamaciones”. Cuevas Segarra, op. cit., T. II, pág. 594.
Así que, independientemente de la etapa en que se pre-sente la propuesta enmienda o que se incluyan en esta *200 nuevas teorías o reclamaciones, los tribunales deben pon-derar con especial énfasis el perjuicio que dicha enmienda podría causarle a la otra parte. S.L.G. Sierra v. Rodríguez, supra, pág. 749; Romero v. S.L.G. Reyes, supra, pág. 731; Torres Cruz v. Municipio de San Juan, 103 D.P.R. 217, 220 esc. 1 (1975).
En cuanto a qué constituye un perjuicio indebido para propósitos de este precepto, nos hemos expresado en varias ocasiones. No obstante, hemos enfocado nuestro análisis en pautar normas en cuanto a las situaciones que no cons-tituyen perjuicio indebido. Así, por ejemplo, hemos dicho que un mero cambio de teoría en las alegaciones no cons-tituye un perjuicio indebido. S.L.G. Font Bardón v. Mini-Warehouse, supra, pág. 336. Tampoco lo es, por sí solo, el tiempo transcurrido entre la presentación de la alegación original y la enmienda propuesta. S.L.G. Sierra v. Rodríguez, supra, pág. 749.
Ante esto, aún persisten dudas en cuanto al significado de perjuicio indebido, para propósitos de la Regla 13.1, supra. El profesor Vázquez Irizarry comenta:
Este criterio de por sí introduce preguntas interesantes en cuanto a qué significa y cuál es su alcance. Después de todo, alguien podría razonablemente afirmar que toda enmienda a las alegaciones ocasionará un perjuicio a la parte contraria pues el objetivo de quien la presenta no es otro que adelantar su causa dentro del litigio. W. Vázquez Irizarry, Procedimiento Civil, 75 Rev. Jur. U.RR. 175, 197 (2006).
Más adelante, el profesor continúa comentando:
[P]odemos colegir que el perjuicio al que se refiere la Regla 13.1 como límite a la concesión liberal de autorización para enmendar, más que un efecto sustantivo negativo sobre la otra parte, lo que pretende evitar es el efecto negativo de carácter eminentemente procesal. De ahí que la clave sea que el per-juicio, para operar como freno a la enmienda, deba ser inde-bido en el sentido de que coloque a la parte contraria en una situación de desventaja respecto a lo que es el trámite orde-nado del litigio. íd.
*201 Para enriquecer nuestro análisis del factor “perjuicio in-debido”, consideramos pertinente analizar la jurispruden-cia que ha interpretado la Regla 15 de Procedimiento Civil federal, 28 U.S.C.A., la cual es equivalente, en parte, a la Regla 13.1 nuestra. Véase Comité Asesor Permanente de Reglas de Procedimiento Civil, Informe de Reglas de Pro-cedimiento Civil, Secretariado de la Conferencia Judicial y Notarial del Tribunal Supremo de Puerto Rico, marzo de 2008, pág. 176.
B. Al igual que en nuestra jurisdicción, en el ámbito federal se fomenta un enfoque liberal al momento de con-ceder enmiendas a las alegaciones. Regla 15 de Procedi-miento Civil federal, supra; 6 Wright, Miller and Kane, Federal Practice and Procedure: Civil 3d Sec. 1471 (2010). Sin embargo, cónsono con nuestras posturas, el Tribunal Supremo federal ha resuelto que la liberalidad que pro-mueve la regla no es infinita. Foman v. Davis, 371 U.S. 178, 182 (1962).
La jurisprudencia federal también considera que el ele-mento principal para denegar enmiendas a las alegaciones es el perjuicio indebido. Véase Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 330—331 (1971); Wright, Miller and Kane, supra, pág. 701. La dilación indebida del promovente de la enmienda también se toma en considera-ción y, a diferencia de nuestros precedentes, puede ser factor por sí solo para denegar su autorización. Cuevas Segarra, op. cit., T. II, pág. 601; 3 Moore’s Federal Practice Sec. 15.15[2] (2011).
En cuanto a qué constituye perjuicio indebido, los tribu-nales federales han ponderado diversos factores. Por ejem-plo, se ha analizado la posibilidad de que la parte que se opone a la enmienda tenga que incurrir en gastos adicio-nales y en una preparación nueva para enfrentarse a las alegaciones enmendadas; si la parte que propone la en-mienda ha tenido múltiples oportunidades para presentar sus enmiendas, y la futilidad de las nuevas causas de *202 acción. Wright, Miller and Kane, supra, págs. 713-727 y 732-746.
Diversos tribunales federales han determinado que las enmiendas a las alegaciones causan un perjuicio indebido si la parte opuesta a la enmienda tiene que alterar su es-trategia en el litigio, incurrir en un nuevo descubrimiento de prueba o si la enmienda complicaría el caso de manera inapropiada, atrasando así su disposición. Véanse: Acosta-Mestre v. Hilton Intern. of Puerto Rico, 156 F.3d 49, 52 (1er Cir. 1998); Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8vo Cir. 1998); U.S. v. Midwest Suspension and Brake, 49 F.3d 1197, 1202 (6to Cir. 1995); Block v. First Blood Associates, 988 F.2d 344, 350 (2do Cir. 1993); Ross v. Houston Independent School Dist., 699 F.2d 218, 229 (5to Cir. 1983).
Como hemos mencionado, los tribunales federales han dado especial énfasis a las previas oportunidades que ha-yan tenido las partes para enmendar sus alegaciones y a la tardanza indebida en presentarlas. Incluso, el principio de economía judicial ha sido considerado para denegar en-miendas a las alegaciones. “A court should also consider judicial economy and its ability to manage the case. In determining the impact of granting leave on judicial economy, a court should consider how the amendment would affect the use of judicial resources and the impact on the judicial system.” 3 Moore’s Federal Practice Sec. 15.15[1] (2011).
C. Nos parecen apropiados algunos de los factores que han sido desarrollados por la jurisprudencia federal para determinar el perjuicio indebido que se le puede ocasionar a la parte que se opone a una solicitud de enmienda. Ya hace décadas habíamos adoptado varios de estos postula-dos, incluso el impacto que podría tener la enmienda en la pronta adjudicación del litigio. Epifanio Vidal, Inc. v. Suro, supra, pág. 796.
En reiteradas ocasiones hemos expresado que una parte no tiene derecho a que su pleito tenga vida eterna en *203 los tribunales, manteniendo así a la otra parte en un cons-tante estado de incertidumbre. Carattini v. Collazo Syst. Analysis, Inc., 158 D.P.R. 345, 369 (2003); Mun. de Arecibo v. Almac. Yakima, 154 D.P.R. 217, 221-222 (2001). Mucho se ha comentado sobre el efecto de la demora en la resolu-ción de casos en nuestros tribunales y el efecto adverso que tiene en la administración de la justicia. Véase D.M. Helfed, El seminario sobre la demora judicial: diseño, resultados y recomendaciones, 77 Rev. Jur. U.P.R. 891 (2008). A tenor con nuestra jurisprudencia, hoy enfatizamos que los tribunales deben tomar en consideración el efecto que puede tener en la economía judicial la solicitud de una en-mienda a las alegaciones.
A pesar de que tanto las Reglas de Procedimiento Civil estatales y federales adoptan un enfoque liberal para la autorización de enmiendas, la parte que pro-pone una enmienda debe ser diligente en su causa para así aprovecharse del liberalismo de la regla. Véase U.S. v. Midwest Suspension and Brake, supra. Aun cuando hemos dicho que el perjuicio indebido es el factor determinante al momento de decidir si se autoriza una enmienda, ello no significa que, de facto, ese es el único factor que los tribunales deben analizar. El que una enmienda no cause perjuicio indebido a la parte que se opone a esta, no exime a los tribunales de considerar los demás factores que hemos reconocido en nuestra jurisprudencia, incluso el tiempo que ha pasado entre la presentación de la demanda y la enmienda propuesta.
Ahora bien, sería un ejercicio en futilidad establecer con exactitud el plazo razonable para presentar una enmienda a las alegaciones, ya que ello depende de las circunstancias particulares de cada caso. No obstante, mientras más tiempo transcurra entre el momento cuando se pudo haber presentado la enmienda y el momento cuando efectiva-mente se presentó, más probable será concluir que hubo una dilación indebida lo cual, sumado al análisis de los *204 demás factores reconocidos en nuestra jurisprudencia, debe traducirse a que no se autorice la enmienda. Véase Wright, Miller and Kane, supra, pág. 764.
En resumen, reiteramos que los tribunales gozan de discreción para conceder enmiendas a las alegaciones, y deben hacerlo liberalmente. Ahora bien, al momento de ponderar si autoriza una enmienda, deben considerar, en conjunto, los factores enumerados en nuestra opinión S.L.G. Sierra v. Rodríguez, supra. El factor de mayor relevancia es el perjuicio indebido que la enmienda pueda causar a la parte contraria, pero ello no significa que los demás factores no deban ser considerados. Ocurre un perjuicio indebido cuando la enmienda: (1) cambia sustancialmente la naturaleza y el alcance del caso, convirtiendo la controversia inicial en tangencial, o (2) obliga a la parte contraria a incurrir en nuevos gastos, alterar su estrategia en el litigio o comenzar nuevo descubrimiento de prueba.
IV
Analizadas las normas con relación a las enmiendas a las alegaciones, procedemos a aplicarlas a la controversia de autos.
La Demanda original en este pleito fue presentada el 14 de abril de 1998 y no es hasta ocho (8) años después que se presenta la Demanda Enmendada. Después de haber rea-lizado un estudio detenido y ponderado de ambas deman-das, pudimos constatar diferencias patentes entre estas en cuanto a los reclamos de los peticionarios contra Wyeth. La Demanda Enmendada modifica tan marcadamente la original, que las diferencias convierten el pleito en uno distinto. Veamos.
La Demanda original de 1998 era una reclamación de horas y salarios. En esta exclusivamente se le reclamó a Wyeth por supuestamente reducir de forma ilegal el pe-riodo de tomar alimentos de una hora a media hora, por *205 obligar a los empleados a trabajar durante ese periodo, por horas trabajadas en exceso de ocho diarias y por séptimos días de trabajo consecutivos. La teoría legal en cuanto al periodo de tomar alimentos se enfocaba en que Wyeth su-puestamente había reducido dicho periodo para su propia conveniencia y que obligaba a algunos empleados a tomar sus alimentos en su lugar de trabajo, para que así super-visaran las máquinas que operaban.
Por su parte, la Demanda Enmendada presenta un pleito distinto. De entrada, se incorporan por primera vez reclamaciones por vacaciones no disfrutadas o fracciona-das, por no pagarse el Bono de Navidad adecuadamente y por no calcularse el diferencial de salario al momento de pagarse las horas extras. En cuanto a la reclamación por horas extras y por el periodo de tomar alimentos, la De-manda Enmendada altera radicalmente la teoría legal.
Mediante la enmienda, se añade una reclamación cono-cida en la esfera federal como donning and doffing. Véase Franklin v. Kellog Co., 619 F.3d 606 (6to Cir. 2010). En esencia, con la enmienda se le reclama a Wyeth horas extras no pagadas por el periodo de tiempo que le tomaba a su empleados desvestirse y ponerse la vestimenta especial que necesitaban para operar en su lugar de trabajo. Según la enmienda, Wyeth les requería a sus empleados arribar a sus lugares de trabajo entre quince (15) y veinte (20) mi-nutos antes de la hora del comienzo del turno para que pudieran vestirse. A la vez, les tomaba la misma cantidad de tiempo quitarse dicha vestimenta especial al concluir su jornada laboral.
La enmienda también altera la teoría legal en cuanto al periodo de tomar alimentos. Se alega que Wyeth redujo dicho periodo ilegalmente al no presentar una solicitud ad-ministrativa de reducción de periodo en el Departamento del Trabajo y Recursos Humanos. Además, se alega que Wyeth solo permitía a sus empleados quince (15) minutos para tomar alimentos, ya que de la media hora disponible, *206 perdían cambiándose de ropa, aseándose y caminando hasta la cafetería. En cuanto a dicha cafetería, la De-manda Enmendada alega que era operada de forma ilegal por Wyeth, ya que no contaba con una certificación de pre-cios razonables de la Junta de Salario Mínimo. (6)
Conforme a lo anteriormente esbozado, es forzoso con-cluir que la Demanda Enmendada no tuvo el efecto de solo ampliar las reclamaciones de la Demanda original, según sostienen los peticionarios. Se trata en realidad de una en-mienda que presenta reclamaciones distintas y nuevas teo-rías legales que se basan en hechos diferentes a los que fueron alegados en la Demanda original. Esto tuvo el efecto de convertir la demanda inicial en tangencial a la enmendada. Como ya vimos, es esa precisamente una de las situaciones en la cual los tribunales deben negar el permiso para enmendar las alegaciones. Véanse: Cuevas Segarra, op. cit., T. II, pág. 594; S.L.G. Font Bardón v. Mini-Warehouse, supra, págs. 335-336.
Por otro lado, permitir la Demanda Enmendada y el cambio radical al pleito que esta introduciría, causaría un incuestionable perjuicio a Wyeth. Luego de litigar un pleito por ocho (8) años, Wyeth tendría que alterar su estrategia legal e incurrir en nuevos gastos de descubrimiento de prueba para atender las nuevas reclamaciones.(7) A su vez, tendría que invertir recursos en investigar expedientes de personal de hace décadas para así presentar unas mocio- *207 nes dispositivas para cada uno de los nuevos demandantes e interventores que podrían tener sus causas de acción prescritas. (8)
A contrario sensu, los peticionarios plantean que Wyeth no puede alegar que sufriría un perjuicio indebido, ya que desde que se trató de consolidar el caso de autos con el pleito De León v. Wyeth, supra, se les informó sobre la exis-tencia de las reclamaciones que ocho (8) años después fue-ron incluidas en la Demanda Enmendada. No nos convence ese argumento. Las alegaciones de un pleito no se transmi-ten a otro por osmosis, por lo cual no podemos sostener que un demandado está sujeto a que se enmienden las alega-ciones de un caso por lo que sucedió en otro sin tomar en consideración el tiempo transcurrido entre los eventos.
Por otra parte, nos parece que los peticionarios presen-taron la enmienda en un momento irrazonablemente tardío. Precisamente, si alegan que tenían conocimiento de las nuevas causas de acción desde que se intentó consoli-dar el caso de autos con el caso De León v. Wyeth, supra, en 1998, ¿por qué esperaron casi una década para enmendar la demanda? Ya dijimos que las partes tienen que ser dili-gentes si quieren ampararse en el liberalismo de la Regla 13.1 de Procedimiento Civil, supra. Permitir la Demanda Enmendada en el caso de autos tendría el efecto de alargar el litigio y complicarlo aún más, a pesar de que está certi-ficado ya como un caso complejo.
Los peticionarios también sostienen que el caso de autos plantea una situación similar a la resuelta en S.L.G. Font Bardón v. Mini-Warehouse, supra. En ese pleito se pre-sentó una reconvención ocho (8) años después de ocurridos los hechos que motivaron la demanda original. En esa oca-sión sostuvimos que la reconvención compulsoria podía presentarse mediante una enmienda a las alegaciones a *208 pesar del tiempo transcurrido, ya que esta surgía de los mismos hechos que motivaron la demanda original y no alteraba radicalmente la naturaleza del caso. Id. pág. 337.
La situación en el caso de autos es distinta. No se trata aquí de una reconvención compulsoria ni de eventos que surgen de los mismos hechos que motivaron la presenta-ción de la demanda original. En este caso los peticionarios enmendaron su demanda para incluir causas de acción nuevas y para alterar sustancialmente sus teorías, basán-dola en hechos distintos a los planteados originalmente. Inexplicablemente, esperaron ocho (8) años para incluir unas reclamaciones que ellos mismos admiten que cono-cían desde casi la misma fecha de la presentación del pleito original. Conforme reseñado, los cambios de la Demanda Enmendada alteraron la naturaleza del pleito original, por lo cual no aplica el resultado al que llegamos en S.L.G. Font Bardón v. Mini-Warehouse, supra.
En conclusión, no incidió el Tribunal de Apelaciones en su decisión de revocar la determinación del Tribunal de Primera Instancia que autorizó la Demanda Enmendada presentada ocho (8) años después de haber comenzado este pleito.(9)
V
Por los fundamentos antes expuestos, se confirma el dic-tamen del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de manera compatible con lo resuelto en esta opinión.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Martínez Torres estuvo con-forme e hizo constar la expresión siguiente:
*209 El Juez Asociado Señor Martínez Torres vota conforme porque no se impugnó la posible inconstitucionalidad de las Reglas para Casos Civiles de Litigación Compleja, 4 L.RR.A. Ap. XXVII, reglas de procedimiento que no fueron enviadas a la Asamblea Legislativa como lo ordena el Art. V, Sec. 6 de la Constitución de Puerto Rico, L.P.R.A., Tomo 1. Véase la Opinión disidente del Juez Asociado Señor Rivera Pérez en López v. Baxter, 163 D.P.R. 628, 647 esc. 4 (2005).
La Jueza Asociada Señora Fiol Matta disintió e hizo constar la expresión siguiente:
La Jueza Asociada Señora Fiol Matta disiente por entender que el Tribunal de Primera Instancia actuó dentro de su dis-creción al permitir la Demanda Enmendada. No debe perderse de perspectiva que la acción instada fue certificada como un litigio complejo, lo que requiere un marcado grado de deferen-cia de los tribunales apelativos hacia el foro primario sobre cómo mejor atender el caso. En los pleitos de esta naturaleza, el análisis de los factores sobre las enmiendas a las alegacio-nes, particularmente los de dilación y perjuicio indebido, no debe ser igual a los casos civiles ordinarios. La gran cantidad de demandantes, la sustancia de las reclamaciones y el desa-rrollo procesal de la controversia justifican la acción del Tribunal de Primera Instancia. Si bien éste no estaba obligado a aceptar la Demanda Enmendada, tenía suficiente discreción para así hacerlo. La parte recurrida no ha demostrado satis-factoriamente que cualquier perjuicio en su contra derrote el derecho de los demandantes a presentar las causas de acción que nuestro ordenamiento les ha concedido, sobre todo cuando muchas de éstas no han prescrito.

 Los hechos procesales del caso de autos ocurrieron vigentes las derogadas Reglas de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III). Por tal razón, haremos referencia a esas reglas en esta Opinión.

 Wyeth contestó la Demanda Enmendada el 16 de marzo de 2009 a pesar de que el Tribunal de Apelaciones había paralizado los términos para contestar la De-manda Enmendada y la Contestación a los Interrogatorios.

 Por otro lado, no podemos castigar a una parte por ser cautelosa y proactiva al cumplir con los términos de las Reglas de Procedimiento Civil. La diligencia de Wyeth en velar por el cumplimiento con los términos procesales, no puede traducirse en una renuncia a sus reclamos, particularmente cuando los ha levantado consisten-temente desde que se presentó la Demanda Enmendada. No podemos permitir que las normas procesales de nuestro ordenamiento se interpreten de forma tal que se convierta el proceso judicial en un campo minado, en donde las partes se enfrentan en un juego para ver quién cae primero en una trampa.

 En cuanto al tercer señalamiento de error, entendemos que no se cometió. De una lectura del recurso de certiorari presentado ante el Tribunal de Apelaciones pudimos apreciar que, además de la alegación de la doctrina de incuria, Wyeth in-cluyó como error el que se autorizara la Demanda Enmendada, ya que ello le causa-ría un peijuicio indebido.
Por otra parte, no tenemos que abundar en cuanto al cuarto señalamiento de error ya que, al revocar la decisión del Tribunal de Primera Instancia que autorizó la Demanda Enmendada, el trámite del caso de autos estará controlado por la demanda original. Ante esto, no hay razón para expresarnos en cuanto a la alegada prescrip-ción de las reclamaciones que ya no formarán parte del pleito.

 La nueva Regla 13.1 de 2009 (32 L.P.R.A. Ap. V) introdujo algunos cambios a esta regla. Comenta el tratadista Cuevas Segarra que “[l]a intención del Comité Asesor Permanente con su propuesta para esta regla, según enmendada, fue conser-var el carácter liberal para la concesión de enmiendas; no obstante, se exigió que la solicitud de enmiendas a las alegaciones debiera estar acompañada con la enmienda *198 propuesta. ... Además, se derogó la restricción establecida en la Regla de 1979, la cual limitaba a la parte demandante enmendar la demanda en una sola ocasión antes de que la parte demandada presentara su alegación responsiva; normativa todavía parcialmente vigente en la jurisdicción federal”. J.A. Cuevas Segarra, Tra-tado de Derecho Procesal Civil, 2da ed., San Juan, Pubs. J.T.S., 2011, T. II, pág. 591. Por no ser contraria a esos cambios, la norma pautada en esta opinión aplica a la interpretación de la Regla 13.1 de Procedimiento Civil de 2009, supra.

 La Demanda Enmendada presentada en el caso de autos es similar a la Demanda presentada en el pleito De León v. Wyeth, Civil Núm. GPE98-0024, el cual se trató de consolidar con este sin éxito a nivel del Tribunal de Primera Instancia.

 Los peticionarios alegan que no existe un potencial perjuicio indebido para Wyeth, ya que el 15 de junio de 2010 los procedimientos en el caso de autos fueron paralizados cuando las partes llegaron a un “consenso de acuerdo transactional”. Véase Petición de certiorari, págs. 21-22. Sin embargo, las partes llegaron al acuerdo conscientes de que la controversia en cuanto a la procedencia de la Demanda En-mendada todavía estaba por resolverse. Por otra parte, este Tribunal está obligado a resolver los casos que lleguen aquí conforme al Derecho aplicable, y no nos parece apropiado en consideración —ni que se nos ponga en posición de considerar— las conversaciones y circunstancias de un acuerdo transaccional a la hora de disponer de las controversias, particularmente cuando nuestro ordenamiento no favorece su uso. Véase Regla 408 de Evidencia, 32 L.P.R.A. Ap. VI.

 Los propios peticionarios admiten que las reclamaciones de diecisiete (17) demandantes añadidos en la Demanda Enmendada podrían tener sus reclamaciones prescritas. Véase Petición de certiorari, pág. 37.

 Habiendo resuelto que no procede la autorización de la Demanda Enmen-dada, resulta innecesario atender el sexto error planteado por los peticionarios.